Roger G. Schwartz
Richard T. Marooney
Michael R. Handler
Robert Nussbaum
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10023
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

*Counsel for Blue Torch Finance, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x
:
In re:                                               :    Chapter 11
                                                     :
Troika Media Group, Inc., et al.,[1]                 :    Case No. 23-11969 (DSJ)
                                                     :
          Debtors.                                   :    (Jointly Administered)
                                                     :
----------------------------------------------------------x

**BLUE TORCH FINANCE LLC'S JOINDER AND REPLY IN SUPPORT OF DEBTORS'**
**MOTION TO APPOINT A JUDICIAL MEDIATOR**
**AND REFER CERTAIN MATTERS TO MEDIATION**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE JONES:**

Blue Torch Finance, LLC ("Blue Torch") hereby submits this joinder and reply (the "Reply") in support of the *Debtors' Motion to Appoint a Judicial Mediator and Refer Certain Matters to Mediation* [Docket No. 53] (the "Mediation Motion") and in response to *Thomas Marianacci's Objection to Debtors' Motion to Appoint a Judicial Mediator and Refer Certain*

---

[1] The Debtors in these chapter 11 cases and the last four (4) digits of each Debtor's federal taxpayer identification number are as follows: Troika Media Group, Inc. (1552), Troika Mission Worldwide, Inc. (3406), Troika Services, Inc. (6042), Troika Design Group, Inc. (4560), Troika Production Group, LLC (3392), Troika-Mission Holdings, Inc. (8417), MissionCulture LLC (1903), Mission Media USA, Inc. (1312), Troika IO, Inc. (4013), CD Acquisition Corp. (5486), Converge Direct, LLC (0788), Converge Direct Interactive, LLC (8110), and Lacuna Ventures, LLC (2168). The Debtors' executive headquarters are located at 25 West 39th Street, 6th Floor, New York, NY 10018.

*Matters to Mediation* [Docket No. 99] (the "Marianacci Objection"). Blue Torch respectfully states the following in support of the Motion and in response to the Marianacci Objection:

## PRELIMINARY STATEMENT[2]

1. The Debtors' Mediation Motion seeks to compel Thomas Marianacci, a former senior executive of the Debtors and one of the four Converge Sellers, to participate in a mediation facilitated by a mediator who is a sitting bankruptcy judge in the Southern District of New York (the "Proposed Mediation"). As set forth in the Debtors' Mediation Motion, the Proposed Mediation will promote good-faith negotiations by and among the Debtors, Blue Torch, the Converge Sellers, and the Official Committee of Unsecured Creditors (the "Creditors' Committee") with respect to (i) disputes concerning the release from escrow of approximately $29.1 million (the "Escrow Funds") funded into an escrow account (the "Escrow Account") as proceeds from a $75 million secured loan funded by Blue Torch (the "Prepetition Secured Loan") to the Debtors in connection with the Company's acquisition of Converge Direct, LLC ("Converge Direct" and together with its affiliates, "Converge") from the Converge Sellers (the "Escrow Dispute") and (ii) other claims the Debtors' estates may have against the Converge Sellers, including Mr. Marianacci (collectively, the "Mediation Issues"). Conversely, Mr. Marianacci's refusal to participate in the Proposed Mediation harms the Debtors' estates by complicating and interfering with the ability of the other three Converge Sellers who have consented to the Proposed Mediation to settle the Escrow Dispute and resolve the other Mediation Issues with the other Mediation Parties.

2. All parties other than Mr. Marianacci (collectively, the "Consenting Mediation Parties," together with Mr. Marianacci, the "Proposed Mediation Parties") support the Proposed

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Mediation Motion.

2

Mediation. As set forth in the Marianacci Objection, Mr. Marianacci opposes the Mediation Motion's request to compel him to participate in the Proposed Mediation on the grounds that the Bankruptcy Court (i) lacks subject matter jurisdiction over the Escrow Dispute and (ii) lacks jurisdiction to order non-debtor parties to mediate such dispute.

3. The Marianacci Objection should be overruled on multiple grounds. As a threshold matter, the Bankruptcy Court has broad authority to compel mediation over "any adversary proceeding, contested matter or **other dispute**". *See SDNY Mediation Procedures and General Order* § 1.3. (emphasis added). The Marianacci Objection rests on a contention that the Bankruptcy Court lacks subject matter jurisdiction over the Escrow Dispute, but that issue is not before the Bankruptcy Court and need not be resolved in order to compel mediation. The only issues before the Bankruptcy Court in the Mediation Motion are (i) whether the Bankruptcy Court has authority to order mediation on a broad range of disputed issues (including, but not limited to the Escrow Dispute) and (ii) whether mediation is warranted in these Chapter 11 Cases. As set forth in the Mediation Motion, the Creditors' Committee's *Statement of the Official Committee of Unsecured Creditors in Support of Debtors' Motion to Appoint a Judicial Mediator and Refer Certain Matters to Mediation* [Docket No. 98] and herein, the answers to both questions are a resounding "yes".

4. Although not relevant for purposes of granting the relief requested by the Mediation Motion, the Bankruptcy Court possesses subject matter jurisdiction over the Escrow Dispute. The Escrow Dispute necessarily involves "allowance or disallowance" of claims against the Debtors' estates, as the Escrow Funds relate to a contractual payment allegedly owed to the Converge Sellers by certain of the Debtors under the MIPA. In addition, the outcome of the Escrow Dispute will have significant implications concerning administration of the estates – if the Escrow Funds are

3

released back to Debtors' estates, Blue Torch's prepetition secured claim will be reduced, and the recoveries of non-insider general unsecured creditors may be increased. Finally, the *res* of the Escrow Funds may serve to satisfy claims against the Converge Sellers either by way of settlement or after litigation against them. The outcome of the Escrow Dispute itself, and the manner by which it is resolved, has a direct impact on the claims and liabilities of the Debtors, the recovery of non-insider creditors, and the disposition of these Chapter 11 Cases after the going concern sale closes.

5. Mr. Marianacci's position that the state court escrow litigation is unrelated to and has no impact on the Debtors' estates disregards reality. The outcome of that litigation directly impacts the Debtors' estates, and is inextricably intertwined with these Chapter 11 Cases. The state court escrow litigation he initiated—with full knowledge that the Debtors were on the verge of commencing these Chapter 11 Cases—appears to be a tactical maneuver to minimize risks attendant with the bankruptcy process and undermine the Chapter 11 Cases themselves. For the benefit of the Debtors, judicial economy, and all stakeholders, Mr. Marianacci should be compelled to participate in the mediation.

6. In sum, the Escrow Dispute, and the resolution of other potential claims by and among the Proposed Mediation Parties, and the $29.1 million dollars held in the Escrow Account to potentially satisfy such claims, is only second to the sale process in matters of importance to the outcome of these Chapter 11 Cases. Mr. Marianacci's opportunistic state court litigation and self-serving but disingenuous characterization of the Escrow Dispute as not involving the Debtors' interests and outside of this Court's jurisdiction should not obstruct the good-faith efforts of the other Proposed Mediation Parties to reach a global resolution of all claims, and he should be compelled to participate in such mediation as a necessary party.

**I.       The Bankruptcy Court Has Authority to Compel Mr. Marianacci to Mediate**

7.      As set forth in the Mediation Motion, the Bankruptcy Court has broad authority to compel an interested party to mediate disputes.  Mr. Marianacci, whether he concedes it or not, is a central figure in the events preceding these Chapter 11 Cases and, therefore, in these Chapter 11 Cases themselves.

- Mr. Marianacci and/or his affiliates, along with the other Converge Sellers, received approximately $65.9 million of cash proceeds in connection with the Converge Acquisition, which closed in March of 2022;

- From the Converge Acquisition closing (March 2022) through September 2023 (when he abruptly resigned), Mr. Marianacci was a senior executive with the Debtors; and

- Mr. Marianacci is a general unsecured creditor of the Debtors and active litigant against the Debtors.[3]

8.      The Proposed Mediation is designed in part to save the Debtors' estates and other Proposed Mediation Parties the costs of commencing litigation.  No party needs to actually commence an adversary proceeding for such potential claims to be ripe for mediation.

9.      The Marianacci Objection's argument that this Court lacks subject matter jurisdiction over the Escrow Dispute is both irrelevant and incorrect.  This Court may compel mediation without deciding whether or not the Court has subject matter jurisdiction over the Escrow Dispute.  Nonetheless, this Court does, in fact, have subject matter jurisdiction over the Escrow Litigation because resolution of the Escrow Dispute necessarily impacts the Debtors' estates in material ways.  It is directly relevant to the quantum and types of claims and liabilities asserted against the Debtors' estates; it interferes with and potentially undermines claims the

---

[3] Mr. Marianacci is one of the named plaintiffs in the case captioned, *Michael Carrano et al. v. Troika Media Group, Inc.*, No. 653449/2023 (N.Y. Sup. Ct.).

5

Debtors may have against certain of the Converge Sellers; and the Debtors will be harmed if that litigation continues.

10. Judicial economy also mandates compelling Mr. Marianacci to participate in the Proposed Mediation, as it could save the Debtors and other Consenting Mediation Parties the cost, expense and distraction of multiple litigations. The Proposed Mediation seeks to resolve all claims and disputes among the parties, including the Escrow Dispute. Indeed, the Debtors and Blue Torch are optimistic that the Proposed Mediation will be successful in part due to the fact that expected professional cost savings from avoiding multiple complex litigations may help facilitate the economic terms of a settlement that all Proposed Mediation Parties would support.

11. The balance of the harms in compelling mediation definitely favors the Debtors. The purpose of bankruptcy is to provide the Debtors the benefit of the automatic stay and to consolidate all claims and liabilities related to, or impacting, the Debtors in a single forum. By ordering mediation, this Court would be facilitating those purposes and avoiding an unnecessary waste of estate resources and/or impairment of potential estate claims against certain of the Converge Sellers. In contrast, Mr. Marianacci suffers virtually no harm in being compelled to mediate— his claims remain outstanding and if not settled, whatever claims Mr. Marianacci wants to litigate will have their day in court – either the Bankruptcy Court or New York Supreme Court – at some point.

12. The only actual costs Mr. Marianacci will incur in connection with the Proposed Mediation are (i) spending time participating in the mediation and (ii) the relatively modest incremental professional fees incurred in connection with the Proposed Mediation. With respect to his time, the other Proposed Mediation Parties believe it will be time well spent and are all aligned in proceeding with the mediation process in an efficient and productive manner.

Concerning the incremental professional fee costs and expenses likely to be incurred in connection with the Proposed Mediation, the revised proposed order compelling mediation [filed at docket no. 106] contemplates that reasonable and documented professional fees of the Mediation Parties can be paid in connection with any settlement, and preserves the right of each Mediation Party to seek reimbursement of their out-of-pocket professional fees and expenses under Section 503(b) of the Bankruptcy Code.

13. Finally, as set forth below, the Bankruptcy Court's subject matter jurisdiction over the Escrow Dispute, and the various legal and factual assertions made in the Marianacci Objection are all *disputed* by the Debtors and Blue Torch. Such disputed matters need not (and should not) be litigated in advance of the mediation intended to resolve them.

**II.     The Bankruptcy Court Has Subject Matter Jurisdiction over the Escrow Dispute**

14. Although not ripe for purposes of deciding the Mediation Motion and the merits of the Proposed Mediation, the Bankruptcy Court has core jurisdiction over the Escrow Dispute. The Bankruptcy Court has core jurisdiction over the Escrow Dispute at a minimum pursuant to 28 U.S.C. §§ 157(b)(2)(A) (matters concerning the administration of the estate), 157(b)(2)(B) (claim allowance or disallowance) and 157(b)(2)(O) (proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship).

15. The outcome of the Escrow Dispute will have significant implications concerning administration of the Debtors' estates – if the Escrow Funds are released to the Debtors' estates, Blue Torch's secured claims will likely be materially reduced following repayment from the proceeds, and the recoveries of non-insider general unsecured creditors may also be increased. On the other hand, if the Escrow Dispute is resolved in favor the Converge Sellers, the aggregate amount of general unsecured claims against the estates will be reduced. The Escrow Dispute

necessarily involves "allowance or disallowance" of claims against the estates, as the Escrow Funds relate to an unpaid contractual payment allegedly owed by certain of the Debtors under the MIPA. The fact that money was funded into the Escrow Account does not change the debtor-creditor relationship as between the Converge Sellers and the Debtors party to the MIPA. Further, the *res* of the Escrow Funds may serve to satisfy claims against the Converge Sellers either by way of settlement or otherwise.

16. The Marianacci Objection's argument that the Bankruptcy Court does not possess subject matter jurisdiction rests on multiple assumptions that are in dispute, and ignores or completely overlooks the facts that clearly establish core jurisdiction. As a purely factual matter, the Escrow Dispute involves a contractual dispute with respect to the MIPA and the Escrow Agreement. The Debtors are a party to both agreements and have independent rights and obligations thereunder. The Converge Sellers' alleged right of payment in respect of the Escrow Funds arises under the MIPA, not the Escrow Agreement itself. More precisely, the Converge Sellers have a claim against the Debtors for payment of the money held in the Escrow Account *pursuant to the terms of the MIPA*. Release of the Escrow Funds is merely a potential remedy with respect to satisfying the Converge Sellers' claims against the Debtors under the MIPA.

17. The Marianacci Objection's assertion that the Debtors do not have a property interest in the Escrow Funds because the Escrow Funds cannot be released to the Debtors is also a disputed issue. The Debtors' estates have, at a minimum, a contingent property interest in the Escrow Funds, and the Escrow Funds should be returned to the Debtors to be applied to paydown Blue Torch's secured claims since the conditions to release the Escrow Funds were not, and cannot be, satisfied. Such disputed legal premise will be a core aspect of the Proposed Mediation.

18. The Bankruptcy Court also has "related to" jurisdiction over the Escrow Dispute. Under applicable Second Circuit law, "a civil proceeding is related to a title 11 case if the action's outcome might have any *conceivable effect* on the bankrupt estate." *SPV Osus, Ltd. v. UBS AG*, 882 F.333, 340 (2d Cir. 2018) (emphasis added). As the Second Circuit explained in *SPV Osus Ltd. v. UBS AG*, "[w]hile 'related to' jurisdiction is not 'limitless', it is fairly capacious, and includes suits between third parties which have an effect on the bankruptcy . . . [a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id*. Here, the Escrow Dispute concerns the release of Escrow Funds to satisfy payment of purchase price considered owed by the Debtors (i.e., unsecured liabilities of the Debtors), which was funded from proceeds of a prepetition secured loan incurred by the Debtors (i.e., secured liabilities). Further, if the Escrow Dispute is resolved in favor of the Debtors and Blue Torch, the release of the Escrow Funds will unquestionably impact the handling and administration of the Debtors' estates.

19. Mr. Marrianaci argues that the Court lacks "related to" jurisdiction because the Escrow Funds are not property of the Debtors' estates and the outcome of the Escrow Dispute will not affect the estates. However, the Debtors' estates clearly have a direct interest in the outcome of the Escrow Dispute as described herein and in the Debtors' submissions, and the Bankruptcy Court clearly has "core" and "related to" jurisdiction over the Escrow Dispute.

9

## CONCLUSION

20. For the reasons stated and for the reasons set forth in the Motion, Blue Torch joins the Debtors in requesting entry of an order granting the relief sought in the Mediation Motion.

Dated: January 9, 2024　　　　　**KING & SPALDING LLP**
　　　　　New York, New York

　　　　　　　　　　　　　　　　By:　*/s/ Roger G. Schwartz*

　　　　　　　　　　　　　　　　　　Roger G. Schwartz
　　　　　　　　　　　　　　　　　　Richard T. Marooney
　　　　　　　　　　　　　　　　　　Michael R. Handler
　　　　　　　　　　　　　　　　　　Robert Nussbaum
　　　　　　　　　　　　　　　　　　1185 Avenue of Americas
　　　　　　　　　　　　　　　　　　New York, New York 10023
　　　　　　　　　　　　　　　　　　Telephone: (212) 556-2100
　　　　　　　　　　　　　　　　　　Facsimile: (212) 556-2222

　　　　　　　　　　　　　　　　　　*Counsel for Blue Torch Finance, LLC*