UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
: 
In re: : Chapter 11
 : 
Troika Media Group, Inc., et al.,[1] : Case No. 23-11969 (DSJ)
 : 
Debtors. : (Jointly Administered)
 : 
---------------------------------------------------------x

# DECLARATION OF ROBERT WHITE
# IN SUPPORT OF SALE MOTION

I, Robert White, hereby declare under penalty of perjury that, to the best of my knowledge and belief, and after reasonable inquiry, the following is true and correct:

1.  I am a Managing Director at Jefferies LLC ("Jefferies"), the proposed investment banker to the debtors and debtors-in-possession (the "Debtors" or the "Company") in the above-captioned cases (the "Chapter 11 Cases"), with principal offices located at 520 Madison Avenue, New York, New York 10022, as well as at other locations worldwide.

2.  I submit this declaration (this "Declaration") in support of the *Motion of the Debtors for the Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Authorizing the Debtors to Enter into the Stalking Horse APA and to Provide the Stalking Horse Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures,*

---

[1] The Debtors in these chapter 11 cases and the last four (4) digits of each Debtor's federal taxpayer identification number are as follows: Troika Media Group, Inc. (1552), Troika Mission Worldwide, Inc. (3406), Troika Services, Inc. (6042), Troika Design Group, Inc. (4560), Troika Production Group, LLC (3392), Troika-Mission Holdings, Inc. (8417), MissionCulture LLC (1903), Mission Media USA, Inc. (1312), Troika IO, Inc. (4013), CD Acquisition Corp. (5486), Converge Direct, LLC (0788), Converge Direct Interactive, LLC (8110), and Lacuna Ventures, LLC (2168). The Debtors' executive headquarters are located at 25 West 39th Street, 6th Floor, New York, NY 10018.

*(E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts Unexpired Leases and (C) Granting Related Relief* [Docket No. 14] (the "Sale Motion").[2]

3. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors. I am not being specifically compensated for this testimony. Jefferies, as a professional proposed to be retained by the Debtors, will receive payments in its capacity as investment banker to the Debtors.

4. Except as otherwise noted, all statements set forth in this Declaration are based upon: (i) my personal knowledge; (ii) information supplied to me by members of the Debtors' management, my colleagues at Jefferies or the Debtors' other professionals; (iii) my review of relevant documents; and/or (iv) my opinion based upon my experience and knowledge of the Debtors' operations and financial condition. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration. The Debtors have authorized me to submit this Declaration.

## BACKGROUND AND QUALIFICATIONS

5. As a global investment banking and financing firm, Jefferies provides a broad range of corporate advisory services to its clients including, without limitation, services relating to: (i) general financial advice; (ii) mergers, acquisitions, and divestitures; (iii) special committee assignments; (iv) capital raising; and (v) corporate restructurings. Jefferies and its senior professionals have extensive experience in the reorganization and restructuring of troubled

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Sale Motion.

companies, both out-of-court and in chapter 11 proceedings. Jefferies has advised debtors, creditors, equity constituencies, and purchasers in connection with many reorganizations. Since 2007, Jefferies has been involved in over 250 restructurings, representing over $800 billion in restructured liabilities.

6. I have been employed by Jefferies since 2009, initially as a Senior Vice President in the Debt Advisory and Restructuring Group, and, beginning in 2013, as a Managing Director. Prior to working at Jefferies, I was a Senior Distressed Debt Analyst at Fintech Advisory, Inc., a private investment firm with $4 billion of assets under management, as well as a Director at Barclays Capital on its Distressed Debt trading desk. At Fintech and Barclays, I analyzed, invested, and traded in the securities of distressed companies. Prior to that time, I was a Senior Vice President specializing in restructuring advisory services at Chanin Capital Partners, Inc., a boutique investment bank. I hold an MBA from Boston University and a Bachelor's Degree with Honors from Allegheny College. I also hold FINRA Series 7 and Series 63 licenses.

7. I have approximately 25 years of investment banking and restructuring experience, assisting companies on a wide range of strategic matters. I have experience handling complex financial and other restructuring matters for a variety of companies (distressed or otherwise and both in- and out-of-court) across a wide spectrum of industries. My areas of expertise include, among other things, (i) advising on financial restructuring strategies; (ii) sizing, structuring, raising, and executing all aspects of financing transactions, including rescue/bridge, debtor-in-possession, and exit financings; and (iii) conducting sale processes both in- and out-of-court for companies undergoing financial distress. My experience has included involvement in many section 363 sale processes, as well as plans of reorganization, in chapter 11 cases or similar situations in a variety of roles with respect to the following companies, among others: Arch Coal,

3

Blackjewel LLC, Brookstone, Inc., Blockbuster Inc., Claire's Stores Inc., Cineworld Plc., the Diocese of Rockville Center, Eastman Kodak, Extended Stay Hotels, Forbes Energy, The Great Atlantic & Pacific Tea Co., Hospitality Investors Trust, JC Penney Inc., McClatchy Company, Momentive Performance Materials, Southland Royalty Co., Rex Energy, Real Industry, Rite Aid, and Unconditional Love Inc. Additionally, my merger and acquisition experience includes troubled company buy-side and sell-side assignments, special committee representations, and traditional M&A transactions.

8. Jefferies was engaged by the Company in December 2022 to explore restructuring alternatives.[3] I, and the Jefferies team working under my direction, have been working closely over the past year with the Company's senior management team and its other advisors to assist the Company in its Prepetition Sale Process and its Postpetition Sale Process (each as defined herein) and in these Chapter 11 Cases.

## PREPETITION SALE PROCESS

9. As described in the *First Day Declaration of G. Grant Lyon* filed on December 7, 2023 [Docket No. 11], the Company pursued a number of restructuring alternatives before filing these Chapter 11 Cases. Among such alternatives, Jefferies launched a prepetition marketing process in February 2023, contacting over 155 potential investors on behalf of the Company, including strategic investors, financial investors, and existing stakeholders (the "Prepetition Sale Process"). The Prepetition Sale Process was designed to (i) raise capital for the Company through debt financing outside of a chapter 11 process, (ii) solicit bids for the Company and/or its Assets

---

[3] On December 15, 2023, the Debtors filed the *Application of the Debtors and Debtors-In-Possession for Entry of an Order (I) Authorizing the Retention and Employment of Jefferies LLC as Investment Banker Pursuant to 11 U.S.C. §§ 327(a) and 328(a), Effective as of December 7, 2023; (II) Waiving Certain Information Requirements of Local Bankruptcy Rule 2016-1; and (III) Granting Related Relief* [Docket No. 42].

4

outside of a chapter 11 process, or, in the alternative, (iii) raise capital for the Company through a chapter 11 process that could include both debtor-in-possession and/or exit financing.

10. In connection with the Prepetition Sale Process, the Company and its advisors prepared, among other things, marketing materials and an electronic data room to provide potential investors and bidders with information upon which to make a proposal. During the Prepetition Sale Process, of the over 140 potential investors contacted, 56 interested parties executed confidentiality agreements and were granted access to the electronic data room, which contained extensive files with significant diligence and other confidential information about the Company's business and Assets (the "Data Room"). Interested parties were also offered the opportunity to meet with the Company's management. Jefferies informed each of these parties that the Prepetition Sale Process was expeditious by necessity in order to address the Company's liquidity forecast.

11. Throughout the Prepetition Sale Process, it was challenging to find potential investors willing to provide financing or to bid on the Company or its Assets, due, at least in part, to the Company's capital structure. Notwithstanding this structural challenge, eight (8) parties executed Indications of Interest, and one party received exclusivity to consummate a structured financing. While the Company engaged with this party in good faith, due to the Company's declining financial performance and capital shortfalls, that party declined to move forward with a transaction in June 2023.

### POSTPETITION SALE PROCESS AND BIDDING PROCEDURES

12. Throughout the course of the Prepetition Sale Process and leading up to the Petition Date, the Company and its advisors engaged in negotiations with existing stakeholders regarding potential restructuring frameworks. While several alternatives were considered, such discussions

5

did not provide an actionable alternative. Parallel hard-fought, arm's-length negotiations resulted in an agreement in principle to a postpetition marketing process supported by a proposed Stalking Horse Bid provided by an affiliate of the Prepetition Secured Lenders.

13. The Debtors and their advisors engaged in extensive negotiations over the timeline of the postpetition sale process (the "Postpetition Sale Process") and the proposed milestones. Given the prepetition marketing activities and the wide availability of the Company's information, the Debtors sought specifically to balance the need to run a postpetition continuation of the Prepetition Sale Process with the need for expediency to avoid damage to the business from a prolonged stay in chapter 11 and the associated administrative cash burn. As such, the Debtors sought Court approval of the Bidding Procedures, pursuant to which the debtors would solicit bids for the Assets from interested counterparties, enter into the Stalking Horse APA with an affiliate of the Prepetition Secured Lenders, conduct the Auction (if necessary), and seek final approval of the Sale from the Court.

14. On January 4, 2024, the Court entered the Bidding Procedures Order, approving (i) the Bidding Procedures and (ii) Lender AcquisitionCo, LLC as the Stalking Horse Bidder for the Assets pursuant to the terms of the Stalking Horse APA. The Bidding Procedures Order authorized the Debtors to enter into the Stalking Horse APA, subject to higher or better Qualified Bids, in accordance with the Bidding Procedures.

15. Before the Petition Date, since the Petition Date, and since the entry of the Bidding Procedures Order, Jefferies has continued to solicit bids through the Postpetition Sale Process. The Debtors, with the assistance of Jefferies, have continued discussions with certain interested parties from the Prepetition Sale Process, as well as with other potential bidders. Since the Petition Date, Jefferies has contacted 57 parties, 13 of which were not part of the Prepetition Sale Process.

The Debtors, through Jefferies, have received several new inquiries regarding the Debtors' business and their Assets during the Postpetition Sale Process, and four (4) additional parties have executed confidentiality agreements. Jefferies has provided to parties that executed the confidentiality agreements (i) access to the Data Room, (ii) a confidential information memorandum, and (iii) management presentations, and has responded to inquiries made while such parties were conducting diligence.

## SALE OF THE ASSETS TO SUCCESSFUL BIDDER

16. The Bid Deadline was January 18, 2024, forty-two days after the Petition Date. Despite the extensive, year-long efforts of Jefferies and the Debtors to market and solicit interest in the Assets—both during the Prepetition Sale Process beginning in February 2023 and during the pendency of these Chapter 11 Cases—other than the Stalking Horse Bid, no Qualified Bids with respect to the Assets were received by the Debtors on or before the Bid Deadline. The Debtors cancelled the Auction and filed a notice with the Court deeming the Stalking Horse Bidder the Successful Bidder, in accordance with the Bidding Procedures Order and the Bidding Procedures.

17. I believe that the Debtors, with the assistance of Jefferies and their other advisors, conducted the Postpetition Sale Process in a manner that afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets, in full compliance with the Bidding Procedures approved by the Court. All creditors, other parties in interest, and prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Assets, which have been subject to a marketing process by Jefferies for over one year. I believe that the terms set forth in the Stalking Horse APA, and the transactions contemplated thereby, represent the highest and best transaction presently available for the Assets. No other person or entity has offered to purchase the Assets on more favorable terms and/or in an

amount that would yield greater economic value to the Debtors' estates as compared to the value being provided under the Stalking Horse APA.

18. I also believe that the Debtors have sound business justification for consummating the transactions contemplated by the Stalking Horse APA. Such business justification includes, but is not limited to: (i) the Stalking Horse APA constitutes the highest and best offer for the Assets; (ii) the Stalking Horse APA presents the best opportunity with respect to the Assets to preserve the value of the Debtors' estates, is beneficial to the Debtors' estates and is in the best interests of the Debtors and their stakeholders; and (iii) unless the Stalking Horse APA and all of the transactions contemplated by the Stalking Horse APA are concluded expeditiously, recoveries to creditors may be diminished. Accordingly, consummating the Stalking Horse APA constitutes a reasonable exercise of the Debtors' business judgment and is in the best interests of the Debtors, their estates, and all parties in interest.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 1, 2024  
      New York, New York

**JEFFERIES LLC**

/s/Robert White  
Robert White  
Managing Director  
Jefferies LLC